**FILED**

MAR 1 9 2015

Clerk, U.S. District Court
District Of Montana
Helena



# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

## BILLINGS DIVISION

| IN RE ROBERTS LITIGATION | CV 13-26-BLG-SEH |
|---|---|
| (This document relates to all actions) | MEMORANDUM AND ORDER |

## **INTRODUCTION AND BACKGROUND**

This matter came on for hearing on March 2, 2015, on the federal defendants'

motion for summary judgment as to all claims in Cause Nos. CV 13-26-BLG-SEH

(Doc. 32) and CV 14-16-BLG-SEH (Doc. 6).[1]   The federal defendants were

represented by Timothy J. Cavan, Esq.   Plaintiff was represented by Elizabeth J.

Honaker, Esq.

---

1 This order will refer to filings in CV 13-26-BLG-SEH when referencing documents filed in both cases.

1

## FACTS

The following facts are not in dispute:

1.    The plaintiff, Sherri Roberts ("Roberts"), was a resident of Rosebud County, Montana, and lived within the exterior boundaries of the Northern Cheyenne Indian Reservation.  (Doc. 34 at ¶ 1.)

2.    Roberts is a non-Indian person.  (Doc. 34 at ¶ 8.)

3.    In 2009, Roberts became involved in a dispute with the Northern Cheyenne Tribe regarding the occupancy of Tribal lands.  (Doc. 34 at ¶ 2.)

4.    Roberts was ultimately charged in Northern Cheyenne Tribal Court with trespass for allegedly failing to vacate the property.  (Doc. 34 at ¶ 3.)

5.    Rule 9(B)(3) of the Northern Cheyenne Code of Criminal Rules provides, in part:

> If the defendant is a non-Indian, the Court shall explain his right to assert lack of personal jurisdiction of the Court over the defendant in a criminal action.  If the defendant affirmatively elects to waive personal jurisdiction, the action shall proceed as if the defendant were an Indian.  If the non-Indian defendant does not affirmatively waive the lack of personal jurisdiction, the action shall become a civil action to exclude the defendant from the Reservation. . . .  The defendant may assert or waive lack of jurisdiction at any time prior to the start of trial.

(Doc. 34 at ¶ 6.)

6.     Roberts was served with a copy of the complaint and summons, and she appeared before the Tribal Court with her retained Tribal Court advocate on April 26, 2009.   (Doc. 34 at ¶¶ 4, 5.)

7.     Roberts pled not guilty to the charge, and requested that the matter be set for a jury trial.   (Doc. 34 at ¶ 7.)

8.     Roberts was advised of her right to assert lack of personal jurisdiction at the time of her arraignment and elected to waive that objection and consented to the Tribal Court's jurisdiction.   (Doc. 35.)   Roberts later denied waiving objections to jurisdiction.   (Doc. 43 at ¶ 12.)

9.     Roberts was released on her own recognizance.   (Doc. 34 at ¶ 14.)

10.     Roberts and her advocate appeared before the Tribal Court for a pretrial conference on May 4, 2009, and again requested a jury trial.   (Doc. 34 at ¶ 17.)

11.     A status conference to schedule the date and time of trial was set for July 20, 2010.   (Doc. 34 at ¶ 18.)

12.     Roberts was advised that her failure or that of her legal advocate to appear at the status conference would result in her being declared a fugitive and a bench warrant for her arrest issued.   (Doc. 34 at ¶ 19.)

13.     Roberts did not appear at the July 20, 2010, status conference.   (Doc. 34 at ¶ 20.)

3

14. A bench warrant was issued by the Tribal Court for Roberts' failure to appear at the July 20, 2010, status conference. (Doc. 34 at ¶ 21.)

15. Bureau of Indian Affairs ("BIA") Law Enforcement Officers on the Northern Cheyenne Reservation are charged with executing warrants and other orders from the Tribal Court. (Doc. 34 at ¶ 22.)

16. BIA Law Enforcement Officer Hawk Haakanson arrested Roberts on July 24, 2010, within the external boundaries of the Northern Cheyenne Reservation at approximately 1:03 p.m., and transported her directly to the BIA Detention Center in Lame Deer, Montana. (Doc. 34 at ¶¶ 23, 24; Doc. 24 at 23:4.)

17. Roberts posted bond and was released from custody at 2:30 p.m. on July 24, 2010. (Doc. 34 at ¶ 27.)

18. A second bench warrant was issued on October 19, 2010, for Roberts arrest for failing to appear as directed for the status conference set for October 19, 2010, before the Tribal Court. (Doc. 34 at ¶ 32.)

19. The warrant commanded law enforcement to arrest Roberts and bring her before the Tribal Court for failure to appear. (Doc. 34 at ¶ 33.)

20. Roberts was arrested on the warrant within the external boundaries of the Northern Cheyenne Reservation by BIA Law Enforcement Officer Randy Elliot on February 19, 2011, at approximately 10:34 a.m. (Doc. 34 at ¶ 34; Doc. 27 at 23: 21.)

4

21.     Elliot transported Roberts to the BIA Detention Center, and was released approximately one-half hour later at 11:10 a.m.    (Doc. 34 at ¶ 37.)

22.     Roberts submitted an administrative tort claim to the Bureau of Indian Affairs on February 17, 2013.    (Doc. 34 at ¶ 50.)

## DISCUSSION

Roberts brought this action against BIA Law Enforcement Officers Haakanson, Elliot, and Scott in their individual capacities alleging that the officers violated her constitutional rights under the Fourth and Fifth Amendment to the United States Constitution.    (CV 13-26-BLG-SEH, Doc. 1.)    Roberts also asserted a claim against the United States under the Federal Tort Claims Act ("FTCA") for false arrest, false imprisonment, and negligent infliction of emotional distress.    (CV 14-16-BLG-SEH, Doc. 1.)    The two actions have been consolidated.    (Doc. 31.)    The federal defendants have moved the Court for an order granting summary judgment as to all claims in the consolidated actions. (Doc. 32.)

## Analysis

### I.    Individual capacity claims against the BIA Officers.

The claims against Haakanson, Elliot and Scott are grounded in *Bivens v. Six Unknown Named Agents of FBI*, 403 U.S. 388 (1971) in which the Supreme Court recognized a private right of action for persons deprived of constitutional rights by

5

federal employees.    Roberts alleges that her arrests by BIA officers on the Tribal warrants were unconstitutional because the Tribal Court lacked jurisdiction to prosecute her.

   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) firmly establishes that qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."    The protections afforded by that immunity are broad, and may insulate a defendant's conduct even if a plaintiff's rights were violated.    *See McCullough v. Wyandanch Union Free School Dist.*, 187 F.3d 272, 277 (2d Cir. 1999) ("[T]he whole point of the qualified immunity defense is to allow a defendant to be dismissed out of the case even if a right was actually violated . . . .").    The doctrine precludes an award of damages for that violation so long as the official action did not cross a constitutional or statutory bright line.    *See Davis v. Scherer*, 468 U.S. 183, 190 (1984); *See also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

   The question is not whether judges or constitutional scholars could divine the parameters of the right plaintiff seeks to redress.    *See Wilson v. Layne*, 526 U.S. 603, 615 (1999).    "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is

6

appropriate." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

A two-part process for analyzing the application of qualified immunity is established in *Saucier*. The initial inquiry focuses on whether the officer's conduct violated a constitutional right. *Id.* "[I]f a violation could be made out on a favorable view of the parties' submissions," then "the next, sequential step is to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201. In making that analysis, the Courts are "permitted to exercise their sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Court finds that the individual federal defendants are entitled to qualified immunity on the basis of the second prong of the analysis. That is, the law was not clearly established at the time of Roberts' arrest that the officer's conduct was unlawful. The arrest warrants were facially valid when issued and delivered to the officers for execution. Each was signed by a judicial officer of the Northern Cheyenne Tribal Court. Each commanded the officers to arrest Roberts and bring her before the court for failure to appear. The officers were thus charged with the duty to execute a facially valid order.

In order for Roberts' claim under *Bivens* to survive, the law must have been sufficiently clear to place a reasonable officer on notice that the Tribal Court acted

7

in complete absence of jurisdiction in issuing the warrants, and that in carrying out the Tribal Court mandate to serve the warrants, reasonable officers would have known they were engaging in an unlawful act. Existing law permits no such conclusions, notwithstanding Roberts' contention that the law was clearly established that the Tribal Court lacked criminal jurisdiction over non-Indians under the authority of *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191 (1978) and that the officers had personal knowledge that Roberts was a non-Indian.

Roberts' argument fails to take into account the Northern Cheyenne Tribal Court's claim of capacity to exercise jurisdiction over non-Indians by consent. It is not necessary, however, for this Court to decide the question of whether a tribal court may exercise such jurisdiction. Rather, the issue is whether the law was so clearly established at the time of Roberts' arrests that a reasonable officer would have known that the tribal court was wholly without jurisdiction and that he was engaging in a null and void act. Existing law is not sufficiently clear to warrant that conclusion. The jurisdictional issue remains.

The officers were presented with facially valid warrants, they were charged with the responsibility to execute the warrants, and they had a reasonable basis to believe in the validity of the warrants and in the lawfulness of their actions in executing the warrants. They are entitled to qualified immunity for the personal capacity claims brought against them under the *Bivens* doctrine.

8

## II. Claims against the United States under the FTCA.

Roberts correctly concedes her FTCA claims based on her July 24, 2010,
arrest are barred by the applicable Statute of Limitations. 28 U.S.C. § 2401(b).
The United States likewise is entitled to summary judgment on Roberts' FTCA
claims based on the arrest of February 19, 2011.

The FTCA waives sovereign immunity for certain torts committed by
federal employees, and provides "[t]he United States shall be liable . . . in the same
manner and to the same extent as a private individual under like circumstances . . .
." (28 U.S.C. § 2674) "if a private person, would be liable to the claimant in
accordance with the law of the place where the act or omission occurred." 28
U.S.C. § 1346(b)(1). Only if a private person would be liable under Montana law
in these circumstances for false arrest and imprisonment, and for negligent
infliction of severe emotional distress would liability be present. *See FDIC v.
Meyer*, 510 U.S. 471 (1994).

To establish a claim of false arrest and false imprisonment under Montana
law, a plaintiff must demonstrate "[1] the restraint of an individual against his will,
and [2] the unlawfulness of the restraint." *Kichnet v. Butte-Silverbow County*,
274 P.3d 740, 745 (Mont. 2012). Roberts cannot establish the second element.

Probable cause for arrest is a complete defense to claims of false arrest and
false imprisonment. *Id.* (internal citations omitted). Therefore, an arrest made

9

under a warrant issued following a court's determination of probable cause is a complete defense to a false imprisonment claim. *Id.*

The arrest on February 19, 2011, followed the Tribal Court's determination that probable cause existed to arrest Roberts for her failure to appear before the court as ordered. The warrant was valid on its face. The officer had a reasonable belief in the validity of the warrant, and in the lawfulness of his actions in executing the order. A private individual could not be held liable in these circumstances under Montana law. The United States is likewise not liable under the FTCA.

The same is true with respect to Roberts' claim of negligent infliction of emotional distress. The Montana Supreme Court has recognized an independent claim for negligent infliction of emotional distress where a plaintiff suffers "serious or severe emotional distress" as a "reasonably foreseeable consequence of the defendant's negligent or intentional act or omission." *Sacco v. High Country Indep. Press, Inc.*, 896 P.2d 411, 418 (Mont. 1995). Officer Elliot's action in executing the Tribal Court warrant from October 19, 2010, was not a negligent or wrongful act or omission. He executed a facially valid warrant consistent with his duty as a law enforcement officer. He had a reasonable basis to believe that the warrant and his actions were valid and lawful.

10

ORDERED:

1.     The federal defendants' motion for summary judgment (CV 13-26-BLG-SEH, Doc. 32; CV 14-16-BLG-SEH, Doc. 6.) is GRANTED.

2.     The plaintiff's claims in Cause Nos. CV 13-26-BLG-SEH and CV 14-16-BLG-SEH are dismissed, with prejudice.

3.     The Clerk is directed to enter judgment in favor of the federal defendants in each action accordingly.

DATED this _19th_ day of March, 2015.

_____
SAM E. HADDON
United States District Judge